[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The marriage of Sherri and John Smith was dissolved on October 3, 1988 before Judge William Lavery. The parties were in agreement that joint custody of John Joseph Smith, known as JJ, now aged nine, and Katie Elizabeth Smith, now aged five, should be retained by both parents and that physical custody should be committed to the mother. The Judgment reflected that agreement.
This current hearing arises from a Motion to Reopen Judgment filed by defendant father on August 24, 1990. Father believes it is in the best interest of the minor children that he be awarded full physical custody of the parties' two minor children and requests this court to enter such an order.
Attorney James Caulfield represented defendant father.
Attorney Joshua Kricker represented plaintiff mother.
Attorney Christine Janis represented the minor children.
Roger A. Frigon was the Family Relations Counselor.
Dr. George Cicchetti was the school psychologist.
Six witnesses were offered during the two days of trial.
John Smith and his former wife, Sherri, now known as Sherri Downey, each told their own versions of the custodial issues. John Smith was the more credible of the two. A rough hewn man, unsophisticated in speech, he was direct and forthright. He was unpolished but open. Further, he acknowledged the problem alcohol represented in his life and took steps to resolve it by joining and actively participating in Alcoholics Anonymous. The mother's home does not encompass an equally forthright CT Page 2906 acceptance of its alcohol issues. Sherri Downey steadfastly rejected any suggestion that she or Scott Lynch, the father of her two recent children, were anything but social drinkers. Mr. Lynch, who lives with Sherri, has had three convictions for Driving While Intoxicated since 1989. His last two arrests were within one month of each other. There is testimony that he drove the children while his automobile license was under suspension. He sat at the mother's side throughout the hearing. She testified he drank only a few beers with his friends. Scott Lynch's jacket is embossed with the nickname "Budman". He was not offered as a witness.
John Smith's fiance, Lori Smith, whose name is a coincidence, testified. The court appreciated the opportunity to evaluate father's future wife. Because she lives with John Smith now, she plays a major role in the childrens' lives and will have a substantial impact on their future. Lori Smith was reassuring to the court. Because she approaches parental tensions with less of a personal history, she offers the potential of being a considerably less adversarial force. She may well become a modifying influence. If she has the courage and the strength to take on such a pacifying role she will truly enrich all the lives enmeshed in this angry confrontation.
Maureen Anne Smith, sister of John Smith, testified briefly.
Dr. George Cicchetti, the school psychologist, was very helpful and credible. He spoke of JJ's lack of motivation and of his defiance. He reported that JJ appears to have given up and is now a year to a year and a half behind in school achievement. Dr. Cicchetti is concerned that JJ is on his way to becoming a dropout, that things will probably get worse as he gets older.
Dr. Cicchetti reports he has had cooperation to some extent from John's mother, but she has not shown the follow through he would like to have seen. She has not initiated any contacts with him about young John, he testified. John Smith has called periodically to see how his son is doing.
Being aware that granting physical custody to his father would result in JJ's school being changed, Dr. Ciccheti testified that a change in school could be positive. No guarantees. He explained that JJ has established a clown role for himself in his current school. He's on the wise side, acting out — and sometimes he has to live up to that role.
The Family Relations Counselor, Roger A. Frigon, was particularly helpful. He had updated his August 8, 1991 report by contacting all the principals immediately prior to the CT Page 2907 hearing. He endured the rigors of cross examination by mother's counsel without defensiveness. He considered the issues raised by Attorney Kricker and responded openly. He was well informed and able to offer current information. Counselor Frigon was both competent and credible.
He recommended that father be granted custody of the minor children.
Counselor Frigon found the father to be candid, to have undergone a dramatic change during the three years since his separation from his former wife, to have a clear sense of the task involved in raising his children and a realistic plan to meet that task.
He found that Sherri Downey, despite her good intentions, was enmeshed in a dysfunctional intimate relationship with Scott Lynch which impaired her parenting ability and compromised her ability to attend to the childrens' needs.
He found she used rationalization and denial to help her cope. Having had the opportunity to view her as a witness, the court concurs. She evidenced little concern about Scott Lynch's convictions for drunken driving: "the children were not in the car . . . I wasn't in the car either"; does not understand JJ's need for counseling: "once this is over he'll get back to himself", although she states that she is not opposed to counseling for him; denies discussing the divorce with the children: "they may have heard me talking about it", in spite of substantial evidence to the contrary; testifies she is "not sure" Scott uses drugs; refers to Scott's use of alcohol as "social drinking"; excuses Scott's kick to JJ as an accident but admits there "may be more"; reports she has no idea how Katie got the idea that her former husband hit her in the face with a vacuum cleaner while she was pregnant with Katie because the incident never occurred; testifies that when JJ jumps out of his father's truck to avoid visitation that it's her former husband's "position" to talk to the boy; justifies guns in the home after telling the Family Relations Counselor there were none.
The refusal of young John to visit with his father after his mother received Counselor Frigon's recommendation that his father be granted custody is disturbing. It indicates a clear manipulation of that young boy by his adversarilly focused mother. Katie was also subjected to maternal stress and manipulation after Counselor Frigon's recommendation was received.
Counselor Frigon's report of August 1991 suggested that CT Page 2908 Sherri Downey should seek counseling in order to examine more closely the issues that have led her to her investment in dysfunctional relationships, and to help her to appropriately address the problems associated with those issues. She did not do so.
He also suggested that Mr. Smith be directed by the court to initiate counseling for the minor children. No such court order was entered, yet Mr. Smith acted upon that recommendation and initiated counseling for himself, Lori Smith and the children.
This court finds all of these factors, as well as others contained in the Family Relations evaluation of Counselor Frigon, combine to create material changes in circumstances which alter the court's earlier finding of the best interests of the children. Pascal v. Pascal 2 Conn. App. 472 (1984).
Court notes that Sherri Downey is currently unemployed.
ORDERS;
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the physical custodianship of the minor children shall be modified as follows together with the following related orders:
1. CUSTODY
a. Although both parents shall remain joint custodians of the two minor children, defendant father shall be awarded physical custody of the two minor children.
b. In the event the joint custodians are unable to reach a concensus regarding major issues of the childrens' health, education or welfare, father's decision shall prevail.
2. ACCESS
a. Plaintiff mother shall have reasonable rights of access to the two minor children which shall include, but shall not necessarily be limited to, the second and fourth weekends of each month, from Saturday at loam to Sunday at 5 p.m. and on Thursday evenings preceding each weekend the children are with their father from after school to 7pm.
b. During the first three months following the date hereof, if plaintiff mother experiences problems with her automobile, CT Page 2909 and if she gives defendant father 24 hours advance notice, defendant father shall be responsible for dropping the children off at mother's house for her weekend access. Mother will be responsible for their timely return.
c. i. The court has awarded the childrens' father physical custodianship because it believes he is more capable of of dealing well with the children and is also more capable of rising above the adversarial atmosphere created by the courtroom confrontations, the unhappy history of the divorce process and mother's contentiousness.
ii. He should be aware that the court is very concerned with the childrens' transition from maternal to paternal physical custodianship and looks to his good judgment in doing what is reasonably appropriate and in the childrens' best interests, exercising firmness when appropriate and compassion when indicated.
iii. The court hopes he will continue a therapeutic relationship for himself and the children and, because their mother has evidenced such an adversarial attitude with regard to his relationship with the children, the court hopes Sherri Downey will be encouraged to join the therapeutic process.
iv. Although Sherri Downey has done nothing to initiate the counseling recommended for herself, and seems ambivalent about the value of counseling for the children, it is likely that future courts will look with great interest at the sincerity with which she responds to the opportunity to participate.
v. With regard to mother's response to this modification, Sherri Downey is advised that future adjustments in her access to the children are likely to be more influenced by her cooperation with their father than her continuing belligerence. Future courts are likely to be aware that the childrens' ability to adjust to the change, a change the professionals as well as the court finds is in the childrens' best interest, will be substantially influenced by mother's collaboration.
d. When not enjoying physical access to the children, mother shall be entitled to telephone access to them at times reasonable and appropriate to the childrens' schedule.
3. SUMMER VACATION
a. Plaintiff mother will have the children for two weeks during the school summer vacation. CT Page 2910
4. HOLIDAYS
a. Parents shall alternate Thanksgiving, Christmas Eve and Christmas Day.
b. If the parents are unable to agree upon the alternating schedule, father may choose it, but each holiday is to be alternated annually unless both parents agree otherwise.
c. The children shall be with mother on Mother's Day and with father on Father's Day.
5. VARIATION OF ACCESS
The court specifically empowers, and encourages, the parents to vary any portion of the access in any mutually agreeable manner.
6. CHILD SUPPORT
a. At this time, unemployed mother shall pay no child support to the physical custodian father.
b. Mother shall notify father, in writing, immediately upon her future employment, and thereafter from time to time, with the information necessary to enable the Child Support Guidelines to be applied.
7. TAX EXEMPTION
a. Defendant father will be entitled to claim the children as his tax exemptions until further order of a court.
b. Plaintiff will sign all documents presented to her by defendant that are necessary to effectuate defendant's use of those tax exemptions.
SCHOOL
The court has reached no conclusion regarding school attendance. There have been some comments that suggest completing the current term and transferring to school near father in September. Yet it may well be helpful to move to the new school now and meet new peers now for the summer social benefits that might accrue. The court leaves that choice to the physical custodian after discussion with Sherri Downey and consultation with the counselor who has been working with the father and the children. Dr. Cicchetti might be another helpful source. Defendant father will be responsible for transporting the children to and from the school of his choice. CT Page 2911
INFORMATION
A. Father shall keep mother informed of all major developments involving the childrens' health and education.
b. The court notes, and hereby quotes, the provisions of 46b-56 (e) of the Connecticut General Statutes:
 "A parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or other health records of such minor child unless ordered by the court for good cause shown."
c. This court enters no orders contrary to this right of access and, further, directs plaintiff father to comply with the letter and with the spirit of this right.
d. Father shall notify all academic and health providers of mother's name and address, once provided by her, and of her right to their records.
10. OTHER ORDERS
All other orders not otherwise contrary to those set forth above shall remain in full force and effect.
11. APPEAL
All the foregoing orders with respect to custody and access shall stand and operate as interim orders of this court during the pendency of any appeal.
JOSEPH L. STEINBERG